## IN THE DISTRICT COURT OF IOWA IN AND FOR BLACK HAWK COUNTY

| | |
|---|---|
| SCOTT TJELMELAND,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED RENTALS, INC.<br>    A Delaware Corporation,<br><br>    Defendant. | Case No. LACV 111462 |

### ORIGINAL NOTICE

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY NOTIFIED that a petition has been filed on the ____ day of January, 2010, in the Office of the Clerk of this Court, naming you as the Defendant in this action. A copy of the Petition (and any documents filed with it) is attached to this Notice. The Petitioner's attorney is James J. Roth, Roth Law Office, P.C., 1400 University Ave., Suite D, Dubuque, Iowa 52001 (Phone: 563-557-1611; Fax: 563-557-9775).

You must serve a Motion or Answer within twenty (20) days after service of this Original Notice upon you, and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Black Hawk County at 316 E. 5th Street, Waterloo, Iowa 50703. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

**If assistance of auxiliary aids or services is required to participate in court due to a disability such as hearing impaired, call the Americans with Disabilities coordinator at (319) 833-3332. If you are in need of dual party telephone relay services, call Relay Iowa TTY at 1-800-735-2942.**

(SEAL)

_____
CLERK OF COURT
Black Hawk County Courthouse
Waterloo, Iowa 50703

**IMPORTANT:** YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.

FILED
2010 JAN 13 PM 1:23
CLERK OF DISTRICT COURT
BLACK HAWK COUNTY, IOWA

# IN THE DISTRICT COURT OF IOWA IN AND FOR BLACK HAWK COUNTY

SCOTT TJELMELAND, )
)
    Plaintiff, )   Case No. LACV _____
)
v. )
)
UNITED RENTALS, INC. )
  A Delaware Corporation,)
)
    Defendant. )

## PETITION AT LAW

COMES NOW Plaintiff, Scott Tjelmeland, and for cause of action against Defendant, United Rentals, Inc., states as follows:

1. Plaintiff, Scott Tjelmeland, was at all times hereto a resident of Black Hawk County, Iowa.

2. Defendant, United Rentals, Inc. is a Delaware corporation licensed to do business in the State of Iowa, doing business in Black Hawk County, Iowa.

3. On or about October 25, 2004 Plaintiff was employed by Defendant as a Branch Manager under a Written Contract, a copy of which is attached as Exhibit A.

4. On or about October 25, 2004 Plaintiff injured his back while delivering tables to a customer.

5. Plaintiff reported the injury to his back to Defendant on or about October 25, 2004 and Plaintiff pursued a workers' compensation claim.

6. On or about March 20, 2005 Defendant terminated Plaintiff from his employment because he pursued workers' compensation remedies as allowed by Iowa law.

7. Plaintiff's termination was in violation of his Written Contract of Employment which incorporates the public policy of

1

the State of Iowa against termination of workers for pursuing their rights under The Iowa Workers' Compensation Law.

8. Plaintiff has suffered economic loss including loss of earnings and loss of the exercise of stock options as a proximate result of the retaliatory termination of his employment.

9. That the Defendant's conduct in their wrongful termination and retaliatory discharge of Plaintiff's employment with Defendant was in reckless and wanton disregard of his rights under Iowa law, and entitles the Plaintiff to an award of punitive damages to deter the Defendant and others from wrongful termination and retaliatory discharge in the future.

10. That the damages sustained by the Plaintiff, Scott Tjelmeland, are in excess of the small claims jurisdictional amount and Defendant, United Rentals, Inc., is liable to him for said damages.

WHEREFORE, Plaintiff, Scott Tjelmeland, prays for judgment against Defendant, United Rentals, Inc., an Iowa corporation licensed to do business in Iowa, in amounts which will fully, fairly and adequately compensate the Plaintiff for his loss, for punitive damages, for legal interests thereon, and the costs of this action.

SCOTT TJELMELAND, Plaintiff;

BY *(signature)*
James J. Roth, AT0006853
Roth Law Office, P.C.
1400 University Ave., Suite D
Dubuque IA 52001
Telephone: (563) 557-1611
Facsimile: (563) 557-9775

2

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is made as of September 1, 1999, by and between U.S. Rentals, Inc., a Delaware corporation (the "Company"), and Scott C. Tjelmeland (the "Employee"), with reference to the following facts:

The Company desires to employ the Employee and the Employee desires to be employed by the Company in a managerial capacity.

In consideration of the foregoing recitals and the mutual covenants herein, the parties agree as follows:

1. **Employment; Acceptance**. The Company hereby employs the Employee and the Employee hereby accepts employment by the Company on the terms and conditions hereinafter set forth.

2. **Duties and Powers**. The Employee is hereby employed in a managerial capacity by the Company and shall devote his full time, attention, energies and abilities in that capacity to the proper management and conduct of the Company's business, to the exclusion of any other occupation. In his managerial capacity, the Employee shall have such duties as are consistent with his duties prior to the date of the Agreement; provided, however, additional or different duties, titles or positions may be assigned to the Employee or may be taken from the Employee from time to time by officers of the Company.

3. **Term**. The employment of the Employee pursuant to this Agreement shall commence on the date hereof and shall continue for a period of two years from the date hereof or until terminated prior to expiration of such term when and as provided in Section 6.

4.1. **Compensation**. The Company hereby agrees to pay to the Employee an annual salary of $45,000 (the "Salary"). Such Salary shall be payable in accordance with the Company's normal payroll practices, and such Salary is subject to withholding and social security, unemployment and other taxes. The Employee's Salary will be adjusted in accordance with the Company's compensation practices and scale in the event the Employee's duties and responsibilities hereunder are materially increased.

4.2 **Bonus Compensation**. The Employee shall be eligible for a bonus for the period July 1, 1999 through December 31, 1999, which shall be consistent with the Elmen Rent All Inc. 1999 Bonus Program. Further, beginning January 1, 2000, the Employee shall be eligible to participate in the Company's profit sharing plan referred to in Section 5. The amount of any such bonus will be determined by the Company's officers or Board of Directors in its sole and absolute discretion. Such bonus shall be paid in accordance with the Company's normal profit sharing practices.

PLAINTIFF'S EXHIBIT A

5. <u>Other Benefits</u>. The Employee shall be entitled to a minimum of two weeks of paid annual vacation consistent with the Company's vacation policy currently in effect. Such vacation shall accrue on the same basis as for other employees of the Company. The Employee shall be entitled to participate, on the same terms as other employees of the Company at the same level as the Employee, in any medical, dental or other health plan, pension plan, profit-sharing plan (subject to Section 4.2), life insurance plan and any other employee benefits that the Company may adopt or maintain, any of which may be changed, terminated or eliminated by the Company at any time in its exclusive discretion. Further, Employee shall be granted an option to purchase 1,500 shares of United Rentals, Inc. common stock, at a price equal to the average closing price of United Rentals, Inc. common stock for the period of 10 trading days before execution of this Agreement (the "United Stock"). Such option shall be issued pursuant to the United Rental, Inc. standard employee stock option plan and shall vest one-third immediately and one-third each on the first and second anniversary of this Agreement and.

6. <u>Termination</u>.

6.1 <u>For Cause</u>. The Company may terminate this Agreement and the Employee's employment for cause, effective immediately after the Company gives written notice of such termination to the Employee. "<u>Cause</u>" for this purpose shall be defined as (i) insobriety; (ii) conviction of a misdemeanor involving moral turpitude or a felony, (iii) illegal business practices, including the Employee's fraud or dishonesty, in connection with the Company's business; (iv) misappropriation of the Company's assets; (v) excessive absence of the Employee from his employment during usual working hours for reasons other than vacation, disability or sickness; or (vi) any material breach by the Employee of any term or provision of this Agreement. On such termination for cause, the Employee shall be entitled only to his Salary accrued as of the date of such termination, and shall not be entitled to any other compensation, including, without limitation, any severance compensation.

6.2 <u>Without Cause</u>. The Company may terminate this Agreement and the Employee's employment without cause, for any reason or no reason at all, effective 15 days after the Company gives written notice of such termination to the Employee. In the event of such termination, the Employee shall be entitled to his Salary through the date of termination and for a period of three months after the date of termination (except for in the event less than three months remain in the term of this Agreement, then Salary shall be paid only through such remaining term), which shall continue to be paid in accordance with the Company's normal payroll practices and not as a lump sum payment. In addition, in the event the Employee is terminated without cause, the Employee shall be entitled to a pro-rata portion of his bonus or profit sharing provided for in Section 4.2 herein, if any. The Employee shall not be entitled to any other compensation.

6.3 <u>By the Employee</u>. The Employee may terminate this Agreement and his employment, effective 15 days after the Employee gives written notice of such termination to the Company. On such termination by the Employee, the Employee shall be entitled only to his Salary through the date of such termination, and shall not be entitled to any other compensation, including, without limitation, any severance compensation.

**6.4** **Disability.** If, in the reasonable judgment of the Company, the Employee becomes unable to perform competently and efficiently his duties hereunder because of any physical, mental or legal disability (including sickness or an injunction or similar order or decree of a court of competent jurisdiction preventing or severely impairing the performance of his duties hereunder), he shall be entitled to his Salary through the date of such termination as provided herein until the total period of disability exceeds 60 consecutive days or, whether or not continuous and whether or not the same disability, exceeds an aggregate of 120 days in any twelve-month period. If the total period of disability exceeds 60 consecutive days or an aggregate of 120 days in any twelve-month period, either the Employee or the Company may terminate this Agreement by giving written notice to the other, effective immediately. On such termination, Employee shall not be entitled to any other compensation, including, without limitation, any Salary or severance compensation.

**6.5** **Death.** In the event of the death of the Employee, this Agreement shall terminate on the date of death, without any further obligation of one party to the other. The Employee and the heirs of the Employee shall not be entitled to any other compensation, including, without limitation, any severance compensation.

**6.6** **No limitation on Company's Right to Terminate.** Any other provision of Section 3 or this Section 6 or otherwise in this Agreement to the contrary notwithstanding, the Company shall have the right, in its absolute discretion, to terminate this Agreement and the Employee's employment hereunder at any time in accordance with the foregoing provisions of this Section 6, it being the intent and purpose of the foregoing provisions of this Section 6 only to set forth the consequences of termination with respect to severance or other compensation payable to the Employee on termination in the circumstances indicated.

7. **Inventions and Company Property.**

7.1 **Inventions, Designs and Patents.** The Employee represents, warrants and agrees that he will fully inform and disclose to the Company all inventions, designs, improvements and discoveries ("Inventions") of which he obtains knowledge or information during his employment by the Company and which relate to the existing or contemplated business of the Company or to any experimental or developmental work carried on or contemplated by the Company, whether or not conceived by the Employee alone or with others and whether or not conceived during regular working hours. All Inventions are and shall remain the exclusive property of the Company. The Employee agrees to assist the Company to obtain any and all patents, trademarks, service marks and copyrights relating to Inventions and to execute all documents and do all things necessary to obtain letters patent and trademark, service mark and copyright registrations, to vest the Company with full and exclusive title to each Invention, and to protect the Inventions against infringement by others, all as and to the extent the Company may request.

Notwithstanding the foregoing provisions of this Section 7.1, this Section 7.1 shall not apply to an Invention developed entirely on the Employee's own time without using the

Company's equipment, supplies, facilities or trade secret information except for those Inventions that either (a) relate at the time of conception or reduction to practice of the Invention to the Company's business or demonstrably anticipated research or development of the Company, or (b) result from work performed by the Employee for the Company.

   7.2.   **Return of Company Property.** All products, records, designs, plans, manuals, field guides, memoranda, lists and other property delivered to the Employee by or on behalf of the Company or by its customers (including, but not limited to, customers obtained for the Company by Employee), and all records compiled by the Employee which pertain to the business of the Company (whether or not confidential) shall be and remain the property of the Company and be subject at all times to its discretion and control. Likewise, all correspondence with customers or representatives, reports, records, charts, advertising materials and any data collected by the Employee, or by or on behalf of the Company or its representatives (whether or not confidential) shall be delivered promptly to the Company without request by it upon termination of the Employee's employment.

   8. **Restrictive Covenants.** The Employee acknowledges that (i) the Employee is or will be employed by the Company in a confidential relationship wherein the Employee, in the course of his employment with the Company, will become familiar with and aware of information as to the specific manner of doing business and the potential acquisition candidates and customers of the Company and its affiliates and future plans with respect thereto, all of which will be established and maintained at great expense to the Company, and that this information is a trade secret and constitutes the valuable goodwill of the Company; (ii) the Employee recognizes that the Company's business is dependent upon a number of trade secrets, including the identity of customers and potential acquisition candidates, the analysis of such candidates and financial data of the Company and that the protection of these trade secrets is of critical importance to the Company; (iii) the Company will sustain great loss and damage if during the periods hereinafter set forth, the Employee should violate the provisions of this Agreement, and further, monetary damages for such losses would be extremely difficult to measure; and (iv) the Employee understands the non-competition provisions in this Agreement with the Company, and, during the Restricted Period, the Employee has the means to support himself and his dependents other than by engaging in a business substantially similar to the Company's business and the provisions of this Section 8 will not impair such ability. The Employee covenants and agrees as set forth below with respect to the Company:

   (a)   **Non-Compete.** For a period commencing on the date hereof and terminating one year after the termination of the Employee's employment (the "Restricted Period"), the Employee shall not, anywhere in the Restricted Area (as defined below), directly or indirectly, acting individually or as the owner, shareholder, partner or employee of any entity, (i) engage in the operation of any equipment and/or tool sale, rental, leasing, financing or repair business that is competitive with the Company, or an affiliate of the Company; (ii) enter the employ of, or render any personal services to or for the benefit of, or assist in or facilitate the solicitation of customers for, or receive remuneration in the form of salary, commissions or otherwise from, any business engaged in such activities; or (iii) receive or purchase a financial interest in, make a loan to, lease property to, or make a gift in support of, any such business in any capacity, including, without limitation, as a sole proprietor, partner, shareholder, officer, director, principal, agent, trustee

- 4 -

or lender; provided, however, that the Employee may own, directly or indirectly, solely as an investment, securities of any business traded on any national securities exchange or NASDAQ, provided the Employee is not a controlling person of, or a member of a group which controls such business and further provided that the Employee does not, in the aggregate, directly or indirectly, own two percent (2%) or more of any class of securities of such business. For purposes of this Section 8, "Restricted Area" shall mean the States of South Dakota, North Dakota, Iowa, Minnesota, Wisconsin, Nebraska, Kansas, Indiana and any other state in which the Employee engages in business on behalf of the Company or its affiliates during his employment.

(b) **Confidential Information**. During the Restricted Period and thereafter, the Employee shall keep secret and retain in strictest confidence, and shall not use for the benefit of himself or others, all data and information relating to the Company's business, including without limitation, know-how, trade secrets, customer lists, supplier lists, details of contracts, pricing policies, operational methods, marketing plans or strategies, bidding information, practices, policies or procedures, product development techniques or plans, and technical processes ("Confidential Information"); provided, however, that the term "Confidential Information" shall not include information that (i) is or becomes generally available to the public other than as a result of disclosure by the Employee in violation of this Agreement, (ii) is general knowledge in the equipment rental business and not specifically related to the Company's business, or (iii) the disclosure of which is required by law.

(c) **Property of the Business**. All memoranda, notes, lists, records and other documents or papers (and all copies thereof) relating to the Company, including such items stored in computer memories, on microfiche or by any other means, made or compiled by or on behalf of the Employee or the Company, or made available to them relating to the Company's business, but excluding any materials (other than the minute book of the Company) maintained by any attorneys for the Company or the Employee prior to the Closing, are and shall be the property of the Company.

(d) **Non-Solicitation**. Without the consent of the Company, which may be granted or withheld by the Company in its discretion, the Employee shall not solicit any employees of the Company to leave the employ of the Company.

(e) **No Disparagement.** From and after the date hereof, the Employee shall not, in any way or to any person or entity or governmental or regulatory body or agency, denigrate or derogate the Company or any of its subsidiaries, or any officer, director or employee, or any product or service or procedure of any such company whether or not such denigrating or derogatory statements shall be true and are based on acts or omissions which are learned by the Employee from and after the date hereof or on acts or omissions which occur from and after the date hereof, or otherwise. A statement shall be deemed denigrating or derogatory to any person or entity if it adversely affects the regard or esteem in which such person or entity is held by investors, lenders or licensing, rating or regulatory entities. Without limiting the generality of the foregoing, the Employee shall not, directly or indirectly, in any way in respect of any such

- 5 -

company or any such directors or officers, communicate with, or take any action which is adverse to the position of any such company with any person, entity or governmental or regulatory body or agency who or which has dealings or prospective dealings with any such company or jurisdiction or prospective jurisdiction over any such company. Provided, however, that nothing contained in this Section 8(e) shall be construed as prohibiting the Employee from complying with a court order, including a subpoena or other form of legal compulsion.

(f) **Rights and Remedies Upon Breach**. If the Employee breaches, or threatens to commit a breach of, any of the provisions of this Section 8 herein (the "Restrictive Covenants"), the Company shall have the following rights and remedies, each of which rights and remedies shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available at law or in equity:

(i) **Specific Performance**. The right and remedy to have the Restrictive Covenants specifically enforced by any court of competent jurisdiction, it being agreed that any breach or threatened breach of the Restrictive Covenants would cause irreparable injury to the Company and money damages would not provide an adequate remedy. Accordingly, in addition to any other rights or remedies, the Company shall be entitled to injunctive relief to enforce the terms of the Restrictive Covenants and to restrain the Employee from any violation thereof.

(ii) **Accounting**. The right and remedy to require the Employee to account for and pay over to the Company all compensation, profits, monies, accruals, increments or other benefits derived or received by the Employee as the result of any transactions constituting a breach of the Restrictive Covenants.

(iii) **Severability of Covenants**. The Employee acknowledges and agrees that the Restrictive Covenants are reasonable and valid in geographical and temporal scope and in all other respects. If any court determines that any of the Restrictive Covenants, or any part thereof, is invalid or unenforceable, the remainder of the Restrictive Covenants shall not thereby be affected and shall be given full effect, without regard to the invalid portions.

(iv) **Blue-Penciling**. If any court determines that any of the Restrictive Covenants, or any part thereof, is unenforceable because of the duration or geographic scope of such provision, such court shall reduce the duration or scope of such provision, as the case may be, to the extent necessary to render it enforceable and, in its reduced form, such provision shall then be enforced.

(v) **Enforceability in Jurisdiction**. The Company and the Employee intend to and hereby confer jurisdiction to enforce the Restrictive Covenants upon the courts of any jurisdiction within the geographic scope of the Restrictive Covenants. If the courts of any one or more of such jurisdictions hold the Restrictive Covenants unenforceable by reason of the breadth of such scope or otherwise, it is the intention of the Company and the Employee that such determination not bar or in any way affect the Company's right to the relief provided above in the

- 6 -

courts of any other jurisdiction within the geographic scope of the Restrictive Covenants as to breaches of such covenants in such other respective jurisdictions, such covenants as they relate to each jurisdiction being, for this purpose, severable into diverse and independent covenants.

9. <u>Survival</u>. The representations, warranties and agreements in Sections 7 and 8 shall survive any cancellation, termination, rescission or expiration of this Agreement and any termination of the Employee's employment with the Company.

10. <u>Severability</u>. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision hereof. The Employee agrees that the provisions of this Agreement are reasonable and valid in geographic and temporal scope and in all other respects. If any court determines that any provision of this Agreement, or any part thereof, is invalid or unenforceable, the remainder of this Agreement shall not thereby be affected and shall be given full effect, without regard to the invalid portions. If any court determines that any provision of this Agreement, or any part thereof, is unenforceable because of duration or geographic scope, such court shall reduce the duration or scope of such provision to the extent necessary to render it enforceable and, in its reduced form, such provision shall then be enforced.

11. <u>Notices</u>. Except as otherwise specifically provided herein, any notice, consent, demand or other communication to be given under or in connection with this Agreement shall be in writing and shall be deemed duly given when delivered personally, when transmitted by facsimile transmission, one day after being deposited with Federal Express or other nationally recognized overnight delivery service or three days after being mailed by first class mail, charges or postage prepaid, properly addressed, if to the Company, at its principal office, and, if to the Employee, at his address set forth following his signature below. Either party may change such address from time to time by giving written notice to the other.

12. <u>Governing Law</u>. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of South Dakota.

13. <u>Assignment</u>. Except as otherwise specifically provided herein, neither party shall assign this Agreement or any rights hereunder without the consent of the other party, and any attempted or purported assignment without such consent shall be void; <u>provided</u>, that the Employee's consent shall not be required hereby for any of the transactions to which Section 6.6 hereof refers or any assignment of this Agreement by the Company to one of its affiliates. This Agreement shall otherwise bind and inure to the benefit of the parties hereto and their respective successors, assigns, heirs, legatees, devisees, executors, administrators and legal representatives.

14. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

15. <u>Entire Agreement</u>. This Agreement contains the entire agreement of the parties and supersedes all prior or contemporaneous negotiations, correspondence, understandings and agreements between the parties, regarding the subject matter of this Agreement. This Agreement may not be amended or modified except in writing signed by both parties and supported by new consideration.

**IN WITNESS WHEREOF**, this Employment Agreement has been duly executed by or on behalf of the parties hereto as of the date first above written.

COMPANY:

U.S. RENTALS, INC.

By _____
John N. Milne, President

EMPLOYEE:

_____  8/25/99
Scott C. Tjelmeland

Address:

2854 Carroll Avenue
Jesup, IA 50648

Doc. #: 13734